[No. G014938. Fourth Dist., Div. Three. July 31, 1996.]

STERIGENICS INTERNATIONAL, Plaintiff and Appellant, v.
COUNTY OF ORANGE, Defendant and Respondent.

**COUNSEL**

Gray, Cary, Ware & Freidenrich, John R. Shuman, Jr., and Aimée E. Jorgensen for Plaintiff and Appellant.

Terry C. Andrus, County Counsel, Laurence M. Watson, Chief Assistant County Counsel, Thomas C. Agin and Jim Persinger, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**SONENSHINE, J.**—Sterigenics International appeals a judgment entered in favor of the County of Orange, arguing the trial court erred in finding the cobalt 60 it uses to irradiate its customers' products fails to come within the

business inventory exemption of Revenue and Taxation Code section 219.[1] We affirm because, as used by Sterigenics, the cobalt 60 functions not as inventory, but as material used in the process of providing a service to its customers and is not an item regularly delivered as part of the provided service.

I

Exposing naturally occurring cobalt 59 to high levels of neutron radiation results in the production of cobalt 60, which gives off radiation as it decays, altering the atomic structure of items exposed to it. This process, known as irradiation, is used to cure wood products, strengthen plastics, and improve the color of precious stones. It is also used to sterilize medical equipment products. The amount of radioactivity an item receives is determined by its proximity to the cobalt 60 and the duration of exposure.

Sterigenics stores cobalt 60 in cylindrical containers, exposing its customers' products to the resulting radiation. In 1989, the county assessed property taxes against the cobalt 60 in Sterigenics's possession from 1985 to 1989. Sterigenics paid the taxes but sought a refund, arguing the material was business inventory under section 219 of the Revenue and Taxation Code.

The trial court disagreed, concluding: "No cobalt is delivered to any of the plaintiff's customers. At best, radiation emitted by the cobalt-60 irradiates the plaintiff's customers' products. Although these customers are charged in accordance with the radiation dosage administered to their products, they are surely paying only because they expect a given result—whether it be sterilization, curing, strengthening or otherwise."

II

Revenue and Taxation Code section 129 defines business inventories as (1) "goods intended for sale or lease in the ordinary course of business" and (2) "raw materials and work in process with respect to such goods."[2] The State Board of Equalization promulgated regulations designed to clarify that which falls within the business inventories exemption. California Code of Regulations, title 18, section 133, subdivision (a)(1) defines business inventories to "include all tangible personal property, whether raw materials, work

---

[1] Revenue and Taxation Code section 219 provides: "For the 1980-81 fiscal year and fiscal years thereafter, business inventories are exempt from taxation and the assessor shall not assess business inventories."

[2] Revenue and Taxation Code section 129 provides: " 'Business inventories' shall include goods intended for sale or lease in the ordinary course of business and shall include raw materials and work in process with respect to such goods. 'Business inventories' shall also

in process or finished goods, which will become a part of or are themselves items of personalty held for sale or lease . . . ."[3] Property held by nonprofessional businesses is included if the item is regularly delivered to the customer as part of the service provided. (§ 133, subd. (c).)

Machinery and equipment are excluded from business inventories because they are "property intended to be used in the production, manufacturing or processing of tangible personal property, [or] the performance of services or for other purposes (e.g., research, testing, experimentation) . . . ." (§ 1521, subd. (a)(6).) Moreover, section 133, subdivision (b)(1) excludes "office supplies, furniture, machines and equipment and manufacturing machinery, equipment and supplies such as dies, patterns, jigs, tooling or chemicals used to produce a chemical or physical reaction . . . ."

## III

Based on the above, there are three ways property qualifies for the exemption. One, it can be an item which is actually held for sale or lease, like cars owned by a car dealer. Two, it can be intended to be incorporated into an item for sale or lease, like leather held by a purse manufacturer. Finally, even property held by service providers qualifies if it is regularly delivered to the customer as part of the provided service, like clothes hangers and plastic bags provided by dry cleaners.

Sterigenics maintains cobalt 60 qualifies for the exemption because it is "delivered to [its] customers as part of its services." Sterigenics explains, "cobalt-60 'loses' part of itself (mass), which loss becomes radiation *that is absorbed and permanently retained by the customers' products.* . . . Unlike energy absorbed in the form of heat (which dissipates), the energy absorbed from cobalt-60 by those products *permanently* alters their energy states and

include animals and crops held primarily for sale or lease, or animals used in the production of food or fiber and feed for such animals.

"Business inventories' shall not include any goods actually leased or rented on the lien date nor shall 'business inventories' include business machinery or equipment or office furniture, machines or equipment, except when such property is held for sale or lease in the ordinary course of business. 'Business inventories' shall not include any item held for lease which has been or is intended to be used by the lessor prior to or subsequent to the lease. 'Business inventories' shall not include goods intended for sale or lease in the ordinary course of business which cannot be legally sold or leased in this state. If goods which cannot be legally sold or leased are not reported by the taxpayer pursuant to Section 441, it shall be conclusively presumed that the value of the goods when discovered is the value of the goods on the preceding lien date.

"Business inventories' shall also include goods held by a licensed contractor and not yet incorporated into real property."

[3] All further section references are to the California Code of Regulations, title 18.

molecular bonds. The cobalt-60 does not leave the customers' products once it is absorbed, and thus it is delivered to the customer as part of [its] regular, nonprofessional services . . . ." (Original italics.) Sterigenics is wrong.

We quickly dispense with the first category. The cobalt 60 itself is obviously not being held for sale. Sterigenics does not sell little bits of cobalt 60. What it does sell is the irradiation *process*.

As to the second category, Sterigenics's argument again fails because it uses cobalt 60 to facilitate a service. The cobalt 60 functions as part of a process in which mass is lost, like a drill bit used in making a piece of furniture, or the soap used by a pet store to clean a customer's pet dog (we are aware these similes are not precisely analogous to radiation). True, "mass" lost in the irradiation process may be absorbed into its customers' products like, to use a very rough analogy, chemicals used in dry cleaning which are somehow "absorbed" into a customer's clothes. But, just as a dry cleaner is not in the business of selling cleaning chemicals, Sterigenics is not selling cobalt 60 *qua* cobalt 60, but the *effect* that cobalt 60 has on various items.

Finally, we cannot conclude cobalt 60 is a product delivered to the customer as part of Sterigenics's provided service, like a plastic bag for a garment provided by a dry cleaner. Unlike the garment bag, it is not delivered to the customer separate from the customer's property on which the service has been performed.[4]

■   As noted by the court in *Associated Beverage Co.* v. *Board of Equalization* (1990) 224 Cal.App.3d 192, 211 [273 Cal.Rptr. 639], "[s]tatutes granting exemption from taxation are to be strictly construed to avoid enlarging or extending the concession beyond the plain meaning of the language used in granting it." Moreover, ". . . the party claiming an exemption bears the burden of showing it clearly comes within the terms authorizing exemption [citations], and any doubt must be resolved against the right to an exemption [citations]." (*Ibid.*)

---

[4]In a helpful question and answer form which the Board of Equalization distributes to county assessors, the board opines that chlorine tablets held in storage by a swimming pool service company *are* business inventories because "they are delivered to customers as an item regularly included in the nonprofessional service." The same cannot be said for the cobalt 60 used by Sterigenics, which is certainly not delivered "as an item" as part of its service. Indeed, it is stretching the word "delivered" beyond its ordinary meaning even to say any part of cobalt 60 is "delivered" at all. De minimis amounts of mass (in terms of weight, not energy) may be lost and absorbed into the customer's product in the irradiating process, but the ordinary person would never think of such a process as the delivery of an "item." The cobalt 60, after all, keeps on emitting radiation (and losing mass) regardless of whether any customer's product is in its vicinity.

So it is here. Unlike the containers in which Sterigenics returns its customers' products, cobalt 60 is used to treat its customers' products, and as such does not even come close to falling within the exemption. The judgment must be affirmed. Respondent shall recover its costs on appeal.

Sills, P. J., and Crosby, J., concurred.